UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 25-cr-0294 (JWB/SGE) |
| Plaintiff, | |
| v. | REPORT & RECOMMENDATION |
| Shannon Michael White, | |
| Defendants. | |

Kristian Weir, United States Attorney's Office, counsel for the Government.

Kate Adams, Assistant Federal Defender, counsel for Defendant.

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for a report and recommendation on Defendant Shannon Michael White's Motion to Dismiss Indictment (Dkt. 17) and Motion to Suppress Tangible Evidence (Dkt. 18). A hearing was held on September 30, 2025. (Hr'g Tr., Oct. 14, 2025, Dkt. 22 ("Tr.").) Assistant United States Attorney Kristian Weir appeared on behalf of the United States of America. Assistant Federal Defender Kate Adams appeared on behalf of Defendant Shannon Michael White, who was present. After the hearing, the parties submitted supplemental briefs. (Dkts. 25, 26.) The Court ordered additional briefing, which the parties submitted on December 17, 2025. (Dkt. 28.) The Court took the motions under advisement on December 17, 2025. For the reasons that follow, this Court recommends that Defendant's Motion to Dismiss be denied and Defendant's Motion to Suppress Tangible Evidence be granted.

## I. BACKGROUND

### A. Procedural History

At the motion hearing, the Court heard testimony from Deputy U.S. Marshal Kameron Paine. The Government offered, and the Court received, Government Exhibits 1 and 2. (Gov't Exs. 1, 2.) Government Exhibit 1 is an image of Mr. White riding a motorcycle on June 4, 2025, at approximately 1:37 p.m. central time. Government Exhibit 2 is an image taken from body worn camera footage showing a motorcycle with a backpack fastened to the handlebars. The footage containing this image was taken on June 4, 2025, at approximately 2:00 p.m. central time. Counsel for Mr. Smith offered, and the Court received, Defense Exhibits 1 and 2. (Def. Exs. 1, 2.) Defense Exhibit 1 is one minute and sixteen seconds of footage from a body worn camera taken on June 4, 2025, at approximately 2:00 p.m. central time. Defense Exhibit 2 is three minutes and ten seconds of footage from a body worn camera taken on June 4, 2025, at approximately 2:21 p.m. central time. The evidence and testimony presented at the hearing established the following information.

### B. Facts

On June 4, 2025, The United States Marshals Service ("USMS") was pursuing Mr. White to execute an arrest warrant based on alleged violations of the terms of his pretrial release during the pendency of an alleged supervised release violation. (Tr. 6-8.) Mr. White was alleged to have violated an inpatient substance abuse treatment requirement. (*See United States v. Shannon Michael White*, Case no. 19-CR-236 (ADM/BRT) (D. Minn.), Dkt. 132.)

USMS's North Star Fugitive Task Force tracked and located Mr. White riding a motorcycle in Minneapolis wearing a backpack. (Tr. 9.) They confirmed the motorcycle plate and tracked Mr. White for approximately an hour with the assistance of Customs and Border Patrol Air and Marine Operations, which assisted the Task Force Officers by following Mr. White with a helicopter and relaying information about his location. (Tr. 9.) Mr. White ultimately stopped at the Moose Bar in Minneapolis and parked the motorcycle in a parking spot in the bar's parking lot, approximately 50-100 feet from the bar's patio and entrance. (Tr. 9, 12.) Mr. White then walked into the bar, walked back out of the bar, hung his backpack on the handlebars of his motorcycle, and returned to the patio in front of the bar where he had a beer and a cigarette. (Tr. 12-13.) Officers approached the bar, passing the motorcycle and backpack on the way, and arrested Mr. White without incident. (Tr. 14-15, 31; Def. Ex. 1.)

Deputy Paine testified that when arresting individuals in public, it is USMS procedure to bring the arrestee's property with them unless the arrestee consents to passing off that property to someone else. (Tr. 19.) Deputy Paine testified that when Marshals arrest someone, as a matter of course they ensure that the individual's personal property is either claimed or brought with the arrestee. (Tr. 22.) When they arrested Mr. White, Deputy Paine testified that USMS had no reason to believe Mr. White was engaged in criminal activity or that evidence of a crime was contained in Mr. White's backpack. (Tr. 17, 25, 40.)

Officers knew before they executed the arrest warrant that they would not be able to impound the motorcycle and, therefore, someone else would be taking custody of it. (Tr. 23.) Immediately after Mr. White was placed under arrest, two officers, including Deputy

3

Paine, walked across the parking lot to the motorcycle and grabbed Mr. White's backpack. (*See* Tr. 46-47; *see also* Def. Ex. 1.) Deputy Paine testified that he grabbed Mr. White's backpack so that Mr. White would have his ID and money available when he was incarcerated at the jail. (Tr. 21.) Mr. White did not request that the officers retrieve his backpack from his motorcycle. (Tr. 41; *see also* Def. Ex. 1.) Deputy Paine testified that the backpack did not present a risk to officer safety and officers did not suspect the backpack to contain evidence of a crime. (Tr. 18, 25.) Deputy Paine testified that he removed the backpack from the motorcycle, carried it to the tailgate of one of the officers' trucks, and began searching it. (Tr. 47.) Inside the bag, officers found a pistol-grip shotgun and several shotgun rounds. (Tr. 23-24; Def. Ex. 2.) Mr. White consented to have his keys and the motorcycle passed off to a staff member he knew at the bar. (Tr. 23.)

Deputy Paine further testified that when a person is arrested in public, he routinely retrieves their effects like a phone or wallet as a matter of standard practice. (Tr. 21-23.) He also testified that it is USMS' standard practice, when an arrestee wants something from their apartment, e.g. a coat or shoes, USMS will go into the apartment "with their consent" to get the requested property. (Tr. 22.)

## II. MR. WHITE'S MOTIONS

### A. Motion to Dismiss

In his Motion to Dismiss, Mr. White argues that under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the indictment against him should be dismissed. Mr. White argues that 18 U.S.C. § 922(g)(1) is unconstitutional because it is inconsistent with the nation's historical tradition of firearm regulation.

In *Bruen*, the Supreme Court announced that the Second Amendment presumptively protects an individual's right to bear a firearm in public, and the government may not constitutionally regulate such conduct unless the regulation "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 597 U.S. at 19. Since *Bruen*, the Eighth Circuit has found § 922(g)(1) to be constitutional without need for resort to any "felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024). Mr. White concedes that Eighth Circuit precedent forecloses his argument. This Court agrees and therefore recommends that Mr. White's Motion to Dismiss be denied.

### B. Motion to Suppress

#### 1. Inventory Search

Mr. White moves to suppress the evidence found in the warrantless search of his backpack after it was removed from the motorcycle. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const. amend. IV. An individual may challenge a search under the Fourth Amendment if it violates the individual's reasonable expectation of privacy. *E.g.*, *United States v. Jones*, 565 U.S. 400, 405-06 (2012) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).

The Government argues that the search of the backpack is justified as an inventory search. Inventory searches are "a well-defined exception to the warrant requirement." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *Illinois v. Lafayette*, 462 U.S 640, 643 (1983). "An inventory search is the search of property lawfully seized and detained, in

order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 n.1 (1996) (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). This exception often applies to the search of an impounded automobile. *See, e.g.*, *United States v. Taylor*, 636 F.3d 461, 465 (8th Cir. 2011).

"The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." *United States v. Arrocha*, 713 F.3d 1159, 1164 (8th Cir. 2013) (quoting *United States v. Frasher*, 632 F.3d 450, 454 (8th Cir.), *cert. denied*, 565 U.S. 893 (2011)). "Inventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable." *United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005) (cleaned up); *United States v. Rowland*, 341 F.3d 774, 779 (8th Cir. 2003) (quoting *Opperman*, 428 U.S. at 369). Adhering to standard procedures helps ensure that an inventory search "is not 'merely a ruse for general rummaging in order to discovery incriminating evidence,' since inventory searches are often conducted in the absence of the safeguards of a warrant and probable cause." *Kennedy*, 427 F.3d at 1143 (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)).

Requiring officers to observe standardized criteria or an established routine does not require that an inventory search be made "in a totally mechanical fashion." *Id.* at 1144-45 (quoting *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004)). The Eighth Circuit has previously stated that police "may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole

purpose is not to investigate a crime." *United States v. Marshall*, 986 F.2d 1171, 1176 (8th Cir. 1993). However, the Constitution does not allow law enforcement to "raise the inventory-search banner in an after-the-fact attempt to justify what was . . . purely and simply a search for incriminating evidence." *Id.* at 1175.

The Government bears the burden of showing that its conduct fell within the bounds of any exemption from the warrant requirement. *Kennedy*, 427 F.3d at 1144. "In the context of an inventory search this burden requires the government to produce evidence that impoundment and inventory search procedures were in place and that law enforcement complied with those procedures." *Id.* (citing *Marshall*, 986 F.2d at 1175-76).

The Government argues that the inventory search of Mr. White's backpack was reasonable because it was conducted pursuant to standard practice and was not pretext to conduct an investigatory search. (Gov't Mem. at 6-15.) It is well-settled that testimony of a standard practice of policy can be sufficient, *e.g.*, *Petty*, 367 F.3d at 1012, and Deputy Paine's testimony included his standard practices and procedures. Deputy Paine testified that he is not aware of any USMS inventory search policy. (Tr. 43.) He further testified that to the extent a policy does exist, it is "based off of, basically, training and experience in dealing with people's personal property." (Tr. 44.) He testified that after an arrest, he would "normally take people's property with them to do them a favor, essentially, for them." (Tr. 18.) He testified that during an arrest in the wintertime, for example, if the arrestee wants something like a phone or jacket from their apartment, officers will enter the arrestee's apartment "with their consent" to get the requested items. (Tr. 22.) He also testified that officers have grabbed an arrestee's bag or phone or wallet that was lying in

7

the location they were arrested. (Tr. 22.) He further testified that when officers take an individual's property to the cellblock, they search the property to prevent the introduction of weapons or other contraband into the facility. (Tr. 20-21.) Deputy Paine testified there is value for arrestees to have access to cash or an ID or their medication while they are in jail. (Tr. 21.)

This Court sees two crucial differences between the Government's proffered justification and the case at hand. The Government relies chiefly on *Illinois v. Lafayette*, 462 U.S. 640, for the proposition that "[o]fficers may inventory personal property in contexts other than a vehicle tow, where the property is accessible." (Gov't Mem. at 26.) In *Lafayette*, the Supreme Court held that it did not violate the Fourth Amendment to perform an inventory search of an arrestee's shoulder bag that he carried on his person. 462 U.S. 640. There, Mr. Lafayette was arrested carrying a purse-type shoulder bag after being involved in an altercation at a movie theater in Kankakee, Illinois. At the station, Mr. Lafayette was directed to empty his pockets, and an officer emptied his shoulder bag and put the contents on the counter, revealing ten methamphetamine pills hidden in a cigarette case. *Id.* at 641. The Court held that law enforcement's search of Mr. Lafayette's shoulder bag was constitutional.

*Lafayette* is easily distinguishable on its facts and therefore provides this Court with little guidance. Unlike *Lafayette*, Mr. White was not carrying or wearing his backpack at the time of his arrest. His backpack was not on his person or within his immediate control. Instead, his backpack was attached to his motorcycle on the other side of the parking lot approximately 50-100 feet away from where he was drinking a beer and smoking a

cigarette and where he was arrested. Deputy Paine's testimony established that it is standard practice to obtain any nearby personal items of an arrestee so that they are not abandoned in public, like a wallet or phone left on a nearby table. That is different from removing a bag or a container that is attached to an arrestee's vehicle on the other side of the parking lot.

Moreover, the Government advances an incomplete statement of the law. *Lafayette* authorizes police to "inventory property found on the person or in the possession of an arrested person who is to be jailed." 462 U.S. at 646. It does not allow police to encroach on an individual's Fourth Amendment protections and thereby bring his effects or sealed containers into police control, subjecting those effects or containers to an inventory search. *See Marshall*, 986 F.2d at 1176; *see also United States v. Lawson*, 487 F.2d 468, 476 (8th Cir. 1973) (declining to create a "searches incident to police custody and control" exception). The differences between the facts of *Lafayette* and the facts presented here present an example of that distinction. Mr. Lafayette was carrying his shoulder bag when he was arrested. Contrariwise, Mr. White was not wearing or carrying his backpack when he was arrested—it was attached to his motorcycle on the other side of the parking lot from where he was arrested. Only the independent actions of law enforcement moved Mr. White's backpack from being attached to his motorcycle into law enforcement custody where it could be subject to an inventory search.

Second, seizing Mr. White's backpack after he was arrested does not serve the administrative purposes of the inventory-search exception. The inventory-search exception promotes three administrative purposes: "the protection of the owner's property while it

remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." *Opperman*, 428 U.S. at 369 (internal citations omitted); *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013) (citing *Opperman*). Arguing that seizing Mr. White's backpack was necessary to protect against the possibility of theft misunderstands the justification of the inventory search. Cataloging the contents of property coming into law enforcement's possession protects *police* against claims over lost or stolen property—not the property owner from the community. *See, e.g.*, *Bertine*, 479 U.S. at 372 (stating inventory searches are reasonable because they "serve to protect an owner's property while it is in the custody of the police"); *Opperman*, 428 U.S. at 369. Furthermore, the purposes of the inventory-search exception are inapplicable unless the property to be inventoried is lawfully in police custody.

At the hearing and in its briefing, the Government established that under its standard procedures, law enforcement will not violate the Fourth Amendment to obtain an arrestee's property. (Gov't Mem. at 11-12; Tr. 22, 41-42.) The record before the court fails to establish compliance with those procedures. Mr. White did not ask for law enforcement to remove his backpack from the motorcycle, nor did he consent to its seizure. The Government itself states that law enforcement "rightly does not simply barge into a residence without consent [to retrieve an arrestee's effects] as this would violate the Fourth Amendment." (Gov't Mem. at 11.) The Court sees little difference between the conduct the Government decries and the conduct in this case. Specifically, there was no evidence that an officer performing an inventory search would have seized a container that is affixed

to a vehicle on the other side of the parking lot from the site of the arrest pursuant to the standard inventory procedures. Absent such evidence, the Government fails to demonstrate that the inventory search occurred in compliance with standard inventory policy. Seizing and searching property that is not properly in police custody does not serve these purposes, so the inventory-search exception is an ill fit in these circumstances.

The Government argues that even if the search did not follow standard policy, it was reasonable because it was not pretextual for an investigatory search. Even if law enforcement fails to adhere to its own inventory-search procedures, that failure does not automatically mandate the suppression of evidence discovered by the search. *E.g.*, *United States v. Mayfield*, 161 F.3d 1143, 1145 (8th Cir. 1998). "Compliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's care-taking function." *Id.* "Something else" must be present to suggest that the police were engaging in criminal investigation rather than community caretaking. *Taylor*, 636 F.3d at 465 (8th Cir. 2011); *Rowland*, 341 F.3d at 780-81. This justification, however, applies only with respect to valid inventory searches—that is, inventory searches performed on items that are already lawfully within police custody. "The police cannot circumvent the Fourth Amendment's warrant requirement by arresting a person and then bringing that person into contact with his possessions which are otherwise unrelated to the arrest." *United States v. Hill*, 730 F.2d 1163, 1167 (8th Cir. 1984) (quoting *United States v. Rothman*, 492 F.2d 1260, 1266 (9th Cir. 1973)).

### 2. Unconstitutional Seizure

Ultimately, the Government's attempt to justify the search as an inventory search puts the cart before the horse. The text of the Fourth Amendment protects against both "searches" and "seizures." U.S. Const., amend. IV. Separate from addressing the validity of the search, we must determine whether the seizure of Mr. White's backpack violated the Fourth Amendment. *See United States v. Place*, 462 U.S. 696, 700-01 (1983) (noting that "in the context of personal property, and particularly containers, the Fourth Amendment challenge is typically to the subsequent search of the container rather than to its initial seizure").

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *United States v. Alvarez-Manzo*, 570 F.3d 1070, 1075 (8th Cir. 2009). Bags attached to a motorcycle are entitled to protection under the Fourth Amendment. *E.g.*, *United States v. Jenkins*, 496 F.2d 57, 73 (2d Cir. 1974) (requiring justification to search motorcycle saddlebags); *United States v. Adkins*, No. 2:07-cr-110, 2008 WL 2368138 (E.D. Tenn. June 6, 2008) (search of motorcycle while defendant was arrested when standing apart from it requires justification under the Fourth Amendment). The warrantless seizure of property is *per se* unreasonable "unless it falls within a well-defined exception to the warrant requirement." *United States v. Shrum*, 59 F.4th 968, 972 (8th Cir. 2023) (cleaned up); *see also Place*, 462 U.S. at 701.

Mr. White and the Government agree that "law enforcement's removal of the backpack from the motorcycle was a seizure under the Fourth Amendment." (Joint Resp., Dkt. 28, at 1.) The parties further agree that Mr. White retained a justified expectation of

12

privacy in the backpack, "which was zipped closed and fastened to the handlebars of a motorcycle of the restaurant he was patronizing, while he sat approximately 50-100 feet away, in view of the motorcycle," and Mr. White had not "abandoned" his backpack for Fourth Amendment purposes. (*Id.* at 2.) Mr. White's backpack was fastened to the motorcycle handlebars across the parking lot, and officers seized it without a warrant. This is a *per se* violation.

The Government argues that seizing Mr. White's backpack is analogous to impounding a driver's vehicle upon arrest, and that the seizure was reasonable because it followed standard procedure and was done in accordance with agents' training and experience. Law enforcement can impound vehicles under certain circumstances as a part of its "community caretaking functions." *United States v. Sims*, 424 F.3d 691, 693 (8th Cir. 2005); *Opperman*, 428 U.S. at 369. But law enforcement's ability to seize and inventory a vehicle upon arrest is justified because of "the diminished expectation of privacy in an automobile due to the public nature of automobile travel." *Marshall*, 986 F.2d at 1174 (citing *Opperman*, 428 U.S. at 368). Those concerns are not applicable here. Mr. White was not on the motorcycle when he was arrested, and his backpack was closed and attached to the motorcycle across the parking lot. There was no suspicion that it contained evidence of a crime. Deputy Paine testified that USMS knew before the arrest that it could not impound the motorcycle. Instead of impounding the motorcycle, law enforcement allowed

it to be passed off to a staff member at the bar.[1] And because USMS did not impound the motorcycle, the justifications for inventorying the contents of impounded vehicles do not apply to removing a backpack attached to the motorcycle.

Additionally, the Government's community caretaking argument jumbles the order of operations. As stated above, a lawful inventory search can be performed on property that is a properly in law enforcement's possession. Arresting agents are not allowed to create circumstances that justify an exception to the warrant requirement to allow them to search an arrestee's luggage. *See, e.g.*, *Hill*, 730 F.2d at 1167 ("The police can not circumvent the Fourth Amendment's warrant requirement by arresting a person and then bringing that person into contact with his possessions which are otherwise unrelated to the arrest." (quoting *Rothman*, 492 F.2d at 1266 )), *cert. denied*, 469 U.S. 884 (1984); *United States v. Wright*, 577 F.2d 378, 381 (6th Cir. 1978) (law enforcement "cannot justify a search of locked baggage as incident to arrest when the only possibility of the defendant gaining access to the luggage was due to [the officer's] own acts"). Even though Mr. White's backpack was visible on the motorcycle, it was still entitled to Fourth Amendment protection from warrantless seizure. *See, e.g.*, *Alvarez-Manzo*, 570 F.3d 1070 (removal of a bag form the cargo area of a bus was a "seizure" under the Fourth Amendment); *Adkins*,

---

[1] The Court notes that the Fourth Amendment does not require law enforcement "to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory." *United States v. Agofsky*, 20 F.3d 866, 873 (8th Cir.) (citing *Bertine*, 479 U.S. at 372), *cert. denied*, 513 U.S. 909 (1994). Here, however, law enforcement made the decision to allow the motorcycle to be passed off to a bar staff member rather than call another law enforcement agency to impound the motorcycle, and the record lacks any testimony that the motorcycle was subject to search before that transfer occurred.

2008 WL 2368138 (search of motorcycle while defendant was arrested when standing apart from it requires justification under the Fourth Amendment).

The Government's reliance on *United States v. Allen*, 713 F.3d 382, is inapt. There, officers arrested the defendant in a parking lot standing next to a luggage cart that held his bags. At the time of the arrest, Mr. Allen was in the process of loading bags from the luggage cart into his car. The Eighth Circuit held that the search of Mr. Allen's car was lawful as a search incident to arrest and evidence from the bags was admissible under the doctrine of inevitable discovery. *Id.* at 387-88. Unlike *Allen*, Mr. White was not holding or loading his backpack when he was arrested. He was on the patio of a bar, drinking a beer and smoking a cigarette. Mr. White's backpack was not inside a vehicle law enforcement impounded (or even intended to impound), and Mr. White was not interacting with his backpack at his motorcycle when officers arrested him. Also unlike *Allen*, officers here had no reason to believe that his backpack contained evidence of a crime. *See id.* at 387 (citing *United States v. Tinsley*, 365 F. App'x 709, 711 (8th Cir. 2010) (per curiam)). Nothing supports a conclusion that officers would have seized and searched the backpack, and the inevitable discovery exception does not apply. *See Allen*, 713 F.3d at 387-88.

The Government states that law enforcement's decision to retrieve Mr. White's backpack "is of no consequence." (Dkt. 26 at 10.) This Court disagrees. Seizing an individual's property without a warrant is a *per se* constitutional violation. The Government fails to provide a justification for the warrantless seizure of Mr. White's backpack, and the Court finds that none existed. The backpack was affixed to the motorcycle far away from Mr. White and did not present a risk to officer safety, officers

15

did not expect the backpack to contain evidence of a crime, and Mr. White did not ask officers to bring his bag with him. Accordingly, the seizure of Mr. White's backpack was a violation of his rights under the Fourth Amendment.

### 3. Suppression

"With limited exceptions, evidence acquired during, or as a consequence of, a search that violates the Fourth Amendment is inadmissible." *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020). The Government has not met its burden to show that an exception to the warrant requirement justifies the seizure and subsequent search of Mr. White's backpack and offers no alternative justification to avoid suppression in this case. Furthermore, this Court determines that there has been no attenuation to purge the evidence of the taint of the constitutional violation, *see Wong Sun v. United States*, 371 U.S. 471, 488 (1963), and the record contains no facts that would support either the independent source exception, *see Murray v. United States*, 487 U.S. 533, 536-37 (1988), or the inevitable discovery exception, *see Nix v. Williams*, 467 U.S. 431, 443-44 (1984).

## III. RECOMMENDATION

For the reasons stated above, and based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. White's Motion to Dismiss be **DENIED**, and Mr. White's Motion to Suppress Tangible Evidence be **GRANTED**.

Date:   January 14, 2026

*s/Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order of judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).